UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SUSAN RULE SANDLER,

                        Plaintiff,                     21 Civ. 3327

         -against-                              **COMPLAINT**
                                                                        **JURY DEMANDED**

COLD SPRING HARBOR CENTRAL SCHOOL
DISTRICT and COLD SPRING HARBOR CENTRAL
SCHOOL DISTRICT BOARD OF EDUCATION,

                        Defendants.
------------------------------------------------------------------x

        Plaintiff Susan Rule Sandler, by and through her attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP and Shubin Law, P.C., for her Complaint alleges as follows:

## INTRODUCTION

        1.      From 1978 through 1980, then-Cold Spring Harbor High School ("CSHHS" or "the School") science teacher Thomas Kohm groomed, and then horrifically and methodically sexually abused, the plaintiff, Susan Rule Sandler, then known as Susan Shanahan. Kohm began by grooming 14-year-old Susan. Beginning in her Freshman year, he sexually assaulted her in an increasingly frequent and serious manner, including violently raping her, until he resigned from the school after school officials became aware of Kohm's abuse. From his resignation through Susan's 1982 high school graduation, and with the acquiescence of school officials, Kohm relentlessly retaliated against her for reporting the abuse.

        2.      CSHHS's highest ranking administrators knew that Kohm was a dangerous sexual predator before he began sexually abusing Susan. When CSHHS administrators were confronted with Kohm's abuse of Susan, they admitted that he had done it before and arranged for his quiet

retirement. These administrators made the cynical decision to engage in an ongoing cover up which has continued until this very day. In what would today be a crime, the administrators made the tactical decision not to report Kohm's sexual offenses to the police and discouraged Susan and her parents from doing so, warning that it "would be bad" for her.

3. These administrators, knowing that Kohm was a dangerous, serial pedophile, did nothing to protect the children who would, predictably, become his future sexual abuse victims. CSHHS administrators continued their cover-up even when North Carolina law enforcement reached out to them in 2003 asking for information that would help them to prosecute Kohm for sexually abusing his granddaughters. In response to a North Carolina court order requiring them to provide information regarding Kohm's past sexual misconduct while a teacher, CSHHS provided law enforcement with no information regarding his assault of Susan Shanahan.

4. Kohm, now deceased, remained at large until Wake County, North Carolina convicted him of sexually abusing his granddaughters in May of 2003, and sent him to state prison as a sex offender.

5. It is beyond debate that CSHHS students, teachers, School administrators, and School Board members knew that Kohm was a dangerous man who preyed on girls prior to when he began sexually abusing Susan. Despite this, CSHHS's most powerful School administrators remained indifferent to the safety of their students, and the community's children at large, and did nothing to reign him in or protect Susan or others from his predation. Their inaction, predictably, enabled and emboldened Kohm to subject Susan to increasingly severe and brazen sexual abuse.

6. Defendants deliberately chose not to act to protect their students because they valued Kohm more than they did the safety of the children entrusted to them. The School

community looked upon Kohm as a teacher with great influence and Ivy League connections, which they prioritized over their students' well-being—Defendants chose their reputation over their integrity. Had Defendants acted in even the most minimally responsible and humane manner, countless children, including Susan, would have been protected from Kohm.

7. Plaintiff brings this action, pursuant to this Court's diversity jurisdiction and New York's Child Victim Act, which makes her claim timely, to seek compensation for the harms she has suffered.

## THE PARTIES

8. Plaintiff Susan Rule Sandler ("Plaintiff") is a natural person and a citizen of the State of California. From 1978 to 1982, Plaintiff was a student of Cold Spring Harbor High School in Cold Spring Harbor, New York, a school within the Cold Spring Harbor Central School District.

9. Defendant Cold Spring Harbor Central School District (the "District") is a municipal corporation that maintains its principal place of business at 75 Goose Hill Road, Cold Spring Harbor, New York 11724 in Suffolk County. At all relevant times, the District owned, operated, maintained Cold Spring Harbor Junior/Senior High School located at 82 Turkey Hill Lane, Cold Spring Harbor, New York 11724, in Suffolk County. The Defendants employed Thomas Kohm ("Kohm") as a science teacher and coach.

10. Defendant Cold Spring Harbor Central School District Board of Education (the "Board") is a corporate body established pursuant to the laws of New York State that maintains its principal place of business at 75 Goose Hill Road, Cold Spring Harbor, New York 11724 in Suffolk County. At all relevant times, upon information and belief, the Board was responsible

for setting the policy of the District and hiring and firing teachers, administrative staff, and the School superintendent.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of different States and the amount in controversy exceeds $75,000.

12.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Eastern District of New York.

13.     This action is timely pursuant to the New York Child Victims Act, N.Y. CPLR § 214-g, because the action alleges intentional and/or negligent acts or omissions and claims injury suffered as a result of conduct which would constitute a sexual offense under Article 130.65 of the New York Penal Law (Sexual abuse in the first degree), and Plaintiff was less than eighteen years old when such conduct was committed against her.

## JURY DEMAND

14.     Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

15.     Thomas Kohm was a revered and well-known figure in the Cold Spring Harbor community. He taught physics and chemistry, was appointed to be a department chair, and was a highly respected coach.

16.     Kohm, a Cornell graduate, spoke often of his Ivy League connections which, in turn, led members of the School community to boast of his power and influence to students and their families who sought an edge in the competitive college admissions environment.

4

17. The School community prized Kohm's access to elite institutions of higher learning; his letters of recommendation were coveted and highly sought after.

18. Kohm was also well-known for his ability to help students win prestigious awards that would aid in the college admissions process.

***Kohm's History of Discriminating Against and Harassing Female Students Prior to Sexually Abusing Susan***

19. In the decades preceding his abuse of Susan, Kohm had a practice of making unannounced entry into the girls' bathroom surprising female students in various stages of undress under the guise of trying to catch smokers. He would personally escort the girls he caught smoking to the administration for discipline. Kohm had no similar practice of entering the boys' bathroom to check for smokers. On information and belief, no other male teacher routinely entered the girls' bathroom.

20. The administration knew that Kohm entered the girls' bathroom unannounced. At least one parent complained to administrators that Kohm was watching girls undress in both the girls' locker room and bathroom. The administrators endorsed Kohm's behavior by disciplining the girls that Kohm identified as the ones he caught smoking in the bathroom.

21. For years prior to abusing Susan, Kohm sexually pursued CSHHS female students. He made in-class lewd and humiliating comments to and about developing teenage girls' bodies. Upon information and belief, School administrators and teachers were aware of Kohm's behavior given how often he engaged in such behavior.

22. Kohm's sexually inappropriate conduct was well known among the School's female student body.

5

23. His inappropriate conduct was also common knowledge among the staff at the Cold Spring Harbor Youth Center (a community center for students located in the School, among other locations).

24. The School also knew that Kohm was capable of horrifying acts of physical violence. For example, in the 1960s, Kohm assaulted a Cold Spring Harbor High School student during a school dance. Kohm punched the boy with so much force that the boy required hospitalization and suffered lifelong damage to his teeth.

***Kohm Begins Grooming Susan and Manipulating Her Family to Gain Sexual Access to Her***

25. Susan attended the School from 1978 to 1982.

26. During her 1978–80 freshman and sophomore years, Susan was a 13- to 15-year-old student in Kohm's classes and participated in after school and summer school-related extra-curricular activities under his supervision.

27. Also during that time period, Kohm became aware that Susan's home life had become unstable as her grandmother, who resided with the family, became gravely ill.

28. Kohm weaponized the family's vulnerability by ingratiating himself with Susan's parents as a means of gaining access to groom and sexually abuse her.

29. Kohm disguised himself as a kind and caring teacher who was happy to step in as an additional caregiver and support resource for Susan and her family.

30. Susan's parents knew that the Cold Spring Harbor School community believed Kohm to be an influential, powerful, revered, and respected teacher worthy of trust.

31. Susan's parents were grateful for Kohm's interest in their daughter during this difficult period.

6

32. It was during this time period that Kohm recruited Susan to work with him to enter a model bridge competition that he supervised, telling her parents that this would bolster Susan's future college applications.

33. Kohm took advantage of Susan's passion for model bridge building and desire to be admitted to a prestigious university by designing an extra-curricular schedule that gave him regular, one-on-one, secluded sexual access to her.

34. Kohm began sexually assaulting Susan in the spring of 1979, while on a School-sponsored trip. At the end of Susan's freshman year, Kohm arranged for her to attend a national bridge building competition in Illinois. Kohm stroked 14-year-old Susan's thigh in a sexually suggestive manner during the car ride home from the airport. Kohm then kissed her on her mouth.

35. During the summer of 1979, Kohm enlisted Susan to participate in the School-sponsored parade float building group he supervised, which was preparing for a New Year's Cotton Bowl Parade competition in Dallas, Texas.

36. Susan was among the small group of CSHHS students that Kohm selected to work on the float. The students initially worked on the School-sponsored project at Kohm's home.

37. Kohm focused his attention on Susan while the other students worked on building the float outside his home. He created one-on-one tasks for Susan in his basement so that he could isolate her from her cohorts and gain sexual access to her.

38. Kohm had sexually explicit photographs of his young daughter hanging on his basement walls. Kohm made sure that Susan saw those pictures as well as other sexually explicit

7

photographs. Susan was particularly alarmed by a large photograph of his daughter completely nude, with her genitals exposed.

39. Alone in the basement, behind a closed door, Kohm sexually assaulted Susan, groping her and rubbing his erect penis against her.

40. To ensure that Susan kept his abuse secret, Kohm told her what she already implicitly understood—if she talked about it, he would make sure that her peers, and the School community, thought of her as a liar and would blame her for interfering with the Dallas trip and float competition. Kohm also threatened to harm her and her family.

***Kohm Stalked, Harassed, and Sexual Abused Susan During the Fall of her Sophomore Year in High School***

41. In the fall of Susan's 1979–80 sophomore year, Kohm escalated the severity and frequency of his sexual assaults.

42. Kohm secured an off-campus warehouse for the School students to continue their School-sponsored work on the Cotton Bowl float.

43. To isolate Susan from her peers, Kohm took her on short drives under the guise of collecting donations for the float project. Kohm ended these trips by bringing Susan to a secluded industrial black top, where—alone in his station wagon—he digitally penetrated her.

44. On one occasion, Kohm attempted to rape Susan in the backseat of his car and only relented when she became very upset.

45. By the start of Susan's sophomore year, Kohm exerted total control over her academic and extracurricular life. He knew her locker combination and routinely placed sexually explicit items in her locker, including a dildo, condoms, lingerie, and pornography.

46. Kohm sexually abused Susan on a regular basis at the School throughout Susan's sophomore year. While at School, Kohm digitally penetrated her vagina, pulled her head to his penis and forced her to give him oral sex and ordered her to masturbate him.

47. Kohm also abused her off campus when she was working with him on the School-sponsored float project.

48. CSHHS gave Kohm access to a private secluded space at the School at the back of his science classroom. A key was required to enter.

49. On a routine basis, Kohm used a pretext to remove Susan from her other classes so that he could sexually assault her in his secluded space at the School.

50. Kohm methodically solicited information from teachers and used school resources to get Susan's grades, standardized test scores, and locker combination—flaunting his access to her private information.

51. Kohm rearranged Susan's class schedule to coincide with his own free periods in order to facilitate his sexual access to her.

52. In full view of School administrators, teachers, and students, Kohm routinely removed Susan from the cafeteria during her lunch periods and brought her to the secluded space in the back of his classroom.

53. During his honors physics class, Kohm routinely brushed against Susan and ran his hands across her back in a sexually suggestive manner.

54. Kohm also routinely intercepted Susan on the way to her after-school bus, forced her into his car, and then sexually abused her.

*School Staff Repeatedly Ignored Susan's Pleas for Protection from Kohm*

55.     On multiple occasions throughout her sophomore year, Susan begged School staff, including School administrative officials, for help in loosening Kohm's vice-like control over her.  Her pleas for help presented the School with a series of alarming sexual abuse red flags and an opportunity to protect her.

56.     The School did not respond to Susan's obvious cries for help.

57.     Susan asked her guidance counselor to prevent Kohm from communicating with her other teachers and accessing her grades.

58.     After the Dallas Cotton Bowl trip, Susan again asked the guidance counselor for help.  She asked him to remove her from Kohm's honors physics class mid-year.

59.     Both times the guidance counselor dismissively offered her no help and no follow up.  He never even questioned why a student excelling in honors physics would want to drop it.

60.     On multiple occasions, Susan sought help from the School's administrators by begging administrative staff to change her locker or the lock combination to prevent Kohm from accessing it.

61.     Teachers at CSSHS did not generally know students' locker combinations.

62.     Yet staff denied her repeated requests and never even inquired why she made the request, ignoring an obvious red flag.

63.     Susan asked her volleyball coach and a teacher whether they could close the athletic practices to visitors in response to Kohm's ominous and lurking presence as he stalked her in the field house during her after-school activities.

64.     The coach and teacher ignored this red flag and offered Susan no help despite the fact that Kohm had no legitimate basis to be watching Susan practice.

65. Each of Susan's pleas and requests was a red flag. School administrators knew or should have known based on the content, seriousness, and number of Susan's pleas for help that Kohm was acting inappropriately and Susan needed protection from Kohm.

***Kohm Travels to Dallas For the Cotton Bowl Parade and Violently Rapes Susan There***

66. Kohm, Susan, and a dozen CSHHS classmates travelled to Dallas to participate in the School-sponsored Cotton Bowl Parade float competition to showcase the School's float entry.

67. Kohm was the only adult the School sent on the trip.

68. They stayed in a university dormitory.

69. When they arrived, Kohm forced Susan to give her spending money to him, forcing her to eat meals with him instead of other CSHHS students.

70. The School's float won the competition and students were scheduled to march in the 1980 Cotton Bowl parade with the winning banner.

71. The night before the parade, Kohm prevented Susan from celebrating with her teammates. He told her she would be "celebrating" with him.

72. Kohm plied Susan with a powerful grain alcohol mixture. She became intoxicated. Kohm remained stone sober.

73. Once Kohm incapacitated Susan, he attacked her and violently raped her in his dormitory room. Susan struggled and attempted to resist, but Kohm used his size and strength to overwhelm and silence her. He ejaculated inside her without using a condom.

***After the Rape in Dallas, Kohm Continued Tormenting Plaintiff Until She Confided in a Friend***

74. After Kohm raped Susan in Dallas, his obsession, harassment, and stalking intensified and became even more aggressive. Kohm repeatedly forced Susan to perform oral sex on him in his secluded space at School or in his basement when she was not in school.

75. On one occasion, when Susan did not show up at his house as he ordered her to do, he drove to her home to confront her. Susan fled to her own basement when she saw him arrive. Kohm pursued her, pinned her, and forcefully kissed her.

76. Susan became increasingly desperate and, as described above, asked a guidance counselor to remove her from Kohm's class and asked School administrators for a locker change and a new lock combination.

77. Kohm responded by warning Susan to keep quiet, telling her that he would make sure that no one believed her. Kohm also threatened her and her family with harm.

78. Despite Susan's persistent and repeated pleas for help, as detailed above, the only inquiry School administrators made of Susan during this time was whether she and Kohm would win the bridge building championship again and whether she could interest other students in joining the program.

79. School administrators responded to Susan's pleas by admonishing her to be grateful for Kohm's special attention and the opportunity he provided to her.

80. CSHHS Principal Wetterer summoned Susan to his office and accused her of not actually building the model bridges herself, claiming that Kohm was doing the work on her behalf. That accusation was baseless and only reinforced Kohm's power over her.

81. Desperate, Susan decided to run away to California.

82. In March of 1980, Susan began sobbing in a School bathroom after discovering a container of sexual lubricant Kohm placed in her locker. A friend found her there. Susan told her friend that she was planning to run away to avoid Kohm and she would kill herself if she had to stay at CSHHS. Susan disclosed that Kohm had been sexually abusing her.

83. Shortly thereafter, Jim Frank, Susan's former health and science teacher, approached her and asked her whether Kohm was sexually abusing her. Susan revealed that he was.

***Plaintiff and Others Notify Cold Spring Harbor High School's Most Powerful Administrators of Kohm's Sexual Abuse***

84. At least one Youth Center staff member reported Kohm's sexually inappropriate behavior in Dallas to the District's highest-ranking officials.

85. Susan was brought to Vice Principal Smyth's office.

86. Susan then confirmed what Smyth had already learned—that Kohm had sexually abused her.

87. Susan also told Smyth that she saw the naked pictures of Kohm's children in his basement and warned him that she feared Kohm was abusing his own children.

88. Susan then confirmed those disclosures about Kohm's abuse in response to Principal Wetterer's inquiry.

89. Both Smyth and Wetterer accepted Susan's disclosures at face value. They asked her few questions, signaling that they had little interest in the details or her suffering and had heard these kinds of Kohm revelations before.

90. The administrators then met with Susan's parents.

91. Administrators told Susan's parents that Kohm had a history of inappropriate conduct with girls at CSHHS.  They said there had been previous, similar "episodes."  They said that Kohm would no longer be teaching at the School.

92. The School permitted Kohm to resign.

93. The School did not inform the student body, teachers, or parents of what Kohm had done.

94. The School did not conduct an investigation into Susan's revelations about Kohm's abuse.

95. It did not look into whether Kohm had abused other students.

96. By a handwritten letter dated March 6, 1980, Kohm resigned from his teaching position "effective March 4, 1980."  Then-Cold Spring Harbor Central School District Superintendent Martin Davis and Principal Wetterer signed the letter as witnesses, dated March 4, 1980 (two days before the date Kohm listed on the top of the letter).  By letter dated March 10, 1980, Superintendent Davis advised Kohm that the Cold Spring Harbor Central School District accepted his resignation on March 4, 1980.

***CSHHS Fails to Protect Plaintiff from Kohm After his Resignation and the Community Blames Susan for Kohm's Departure***

97. In service to its coverup, CSHHS permitted Kohm to use School property and resources to continue to stalk, harass, menace, psychologically terrorize, and retaliate against Susan after she reported the abuse until her 1982 graduation, even though he no longer worked at the school.  Kohm regularly engaged in these behaviors during both the school day and extra-curricular actives.

98. Susan complained about Kohm to School officials, including School psychologist David Jones, on multiple occasions.  District administrators offered her no help or protection and

14

instead, told Susan that Kohm had a right to be on School property because he had children who attended the School.

99. Kohm also engaged in these behaviors off School property. Kohm parked his car for hours in front of Susan's house on multiple occasions.

100. Kohm methodically sought to undermine Susan's credibility to retaliate against her. His efforts led to the School community ostracizing her; and parents, students and staff treated her with relentless cruelty.

101. Kohm lied to students and their parents about what had occurred. In the absence of any corrective statement from the School, Susan's fellow students, their parents, and her teachers blamed her for "snitching" about what Kohm characterized as "consensual" sexual encounters.

102. The School took no steps to protect Susan from the students, parents, and School staff that continued to torment her.

***CSHHS Engages in a Decades Long Cover Up That Results in the Sexual Abuse of Other Children and Undermines a North Carolina Child Sexual Assault Criminal Prosecution***

103. At the time Susan reported Kohm's sexual abuse, the administrators decided, and conspired, to cover the matter up.

104. In the days before Susan was slated to speak at her commencement, Smyth asked to speak with Susan privately in his office. During that meeting, Smyth instructed Susan that she was not to mention her experience with Kohm during her commencement address and he demanded to preview her speech before the ceremony.

105. Principal Wetterer and Vice Principal Smyth warned Susan's parents that it would not be in her "best interest" to notify the police.

106. CSHHS deliberately kept the information they had received and deemed credible—that Kohm had sexually assaulted and raped a child, Susan—from the police knowing, as they did, that doing so placed others, including its own students, at grave risk of being sexually abused.

107. CSHHS made the unconscionable decision to hide the information Susan had provided to them about Kohm's children—that Kohm had pornographic pictures of his children on display and that she believed he was presently sexually abusing them—from the police.

108. Upon information and belief, two Kohm daughters committed suicide.

109. In March of 2003, Wake County North Carolina indicted Kohm (*State v. Thomas Kohm*, Case No. 03 CRS 25286-89 (N.C. 2003)), charging him with sexually abusing two of his granddaughters, conduct which he "freely admitted" and to which he later plead guilty.

110. In the course of the prosecution, Kohm's children notified the Wake County prosecutor that Kohm had engaged in sexual misconduct against his student, Susan Shanahan.

111. On May 7, 2003, a Wake County Superior Court Judge ordered Cold Spring Harbor Central School District Administration to provide employment records "pertaining to Thomas Sleight Kohm's resignation from Cold Spring Harbor High School, any complaints received and disciplinary action taken prior to his resignation, and all information regarding an incident of misconduct with student Susan Shanahan."

112. In response, Assistant Superintendent Wilansky (who later became the District's superintendent for over a decade) provided only Kohm's resignation letter and Superintendent Davis' letter advising Kohm that the Board had accepted his resignation.

113. Despite the explicit terms of the Superior Court Judge's Order, Assistant Superintendent Wilansky provided no records or information relating to "complaints received

16

and disciplinary action taken prior to [Kohm's] resignation" and no "information regarding an incident of misconduct with student Susan Shanahan."

114. The School's decision to protect itself left Kohm free to continue victimizing girls for decades and, on information and belief, undermined Wake County's child sexual abuse criminal prosecution.

115. As a result of Defendants' conduct, Susan suffered the physical harm of the abuse and rape as well as emotional pain and suffering.

## FIRST CAUSE OF ACTION
### Negligence

116. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

117. Defendants had a duty to take reasonable steps to protect Susan—a high school student in its care—from foreseeable harm when she was under its supervision and in its care, custody, and control.

118. Defendants also had a duty to take reasonable steps to prevent Kohm from taking advantage of his position as a teacher to sexually abuse Susan.

119. Defendants exercised supervision, care, and custody over Susan when she was a student enrolled at the School, including, without limitation, when she attended school field trips and participated in school extracurricular activities, during which time Defendants had a duty to take reasonable steps to protect her.

120. Defendants breached the aforementioned duties by failing to exercise reasonable care to prevent Kohm from sexually abusing Susan.

121. Defendants breached these duties by, *inter alia*, retaining and failing to supervise Kohm and providing him with unfettered access to Plaintiff; failing to require sufficient

17

supervision and oversight of teachers during overnight school trips and off-campus activities; failing to train its personnel in the common signs of sexual abuse or "grooming" of prospective abuse victims; failing to warn Plaintiff, her parents, and other parents about the signs of sexual abuse, and; entrusting their premises and instrumentalities to Kohm, who they knew or, at a minimum, should have known, to be sexual predator.

122. Defendants failed to take any steps to protect girls, including Susan, from Kohm's sexual abuse.

123. Defendants failed to institute readily available policies and practices that would have prevented the foreseeable sexual abuse of Susan and others, including:

   a. Terminating any teacher—such as Kohm—who engaged in sexual activity with a student or, at a bare minimum, enhanced supervision and monitoring of any such teacher;
   b. Prohibiting male staff from entering the girls' bathroom;
   c. Requiring a female staff member to be responsible for monitoring the girls' bathroom;
   d. Requiring that at least two adults be present for all off-campus school activities and field trips, particularly overnight trips;
   e. Prohibiting teachers from bringing students to into a secluded private spaces in the School unless there was another adult present or the door remained open;
   f. Training School staff, as well as students and their families, on how to report violations of safety policies;

18

    g. Training School staff, as well as students and their families, on how to recognize common signs of sexual abuse or "grooming" of prospective abuse victims;

    h. Requiring School staff to report signs of sexual abuse or grooming, and;

    i. Issuing standardized protocols for investigating and appropriately managing allegations of sexual misconduct by School staff.

124. Defendants had the ability to require, and, on information and belief, did require, various kinds of safety-related training and education concerning known hazards to students. Yet no such monitoring, control, training, or education was ever implemented with respect to addressing or preventing child sexual abuse in the School.

125. In breaching these duties, Defendants, through its acts and omissions, created and/or increased the risk that Plaintiff would be sexually abused.

126. The sexual abuse Plaintiff suffered was a reasonably foreseeable result of Defendants' breach of their duties.

127. As a direct and proximate cause Defendants' negligence, Plaintiff suffered the damages hereinbefore alleged.

## APPORTIONMENT ALLEGATIONS

128. At all times relevant hereto, Defendants acted with reckless disregard for the safety of others.

129. At all times relevant hereto, Defendants acted knowingly to cause the acts or failures upon which liability is based.

130. Defendants are not entitled to protection under CPLR 1601 because of the exclusions set forth in CPLR 1602(2)(iv), 1602(7), and 1602(11).

19

131. At all times relevant hereto, Defendants had a non-delegable duty to Susan, acted with reckless disregard for the safety of others, and acted knowingly or intentionally, and in concert with Kohm.

132. By reason of the foregoing, Defendants are precluded from limiting their liability through the apportionment of liability to any joint tortfeasor.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

1. Compensatory damages in an amount to be determined;

2. An order awarding Plaintiff reasonable attorneys' fees, together with costs and disbursements; and

3. Such other further relief as the Court may deem just and proper.

Dated: June 14, 2021

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By: _____
Debra L. Greenberger
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

Andrew Shubin*
Shubin Law, P.C.
333 South Allen Street
State College, PA 16801

*Attorneys for Plaintiff*
**Application for admission Pro hac vice pending*
